# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**JEFF YEAGER,**

        Plaintiff,

v.                                                                                                 **Civil Action No. 1:10-CV-127**
                                                                                                 **(BAILEY)**

**PHILLIPS CONSTRUCTION, LLC,**
**and DANNY FREEMAN,**

        Defendants.

## ORDER DENYING DEFENDANTS'
## RENEWED MOTION FOR SUMMARY JUDGMENT

Pending before this Court is defendants Phillips Construction, LLC's and Danny Freeman's Renewed Motion for Summary Judgment [Doc. 115], filed April 19, 2012. The plaintiff responded on May 4, 2012 [Doc. 138]. The defendants did not reply. Having reviewed the record and considered the arguments of the parties, this Court concludes that the defendants' motion should be **DENIED**.

## BACKGROUND

**I.**    **Undisputed Material Facts**

This is a deliberate intent action in which Jeff Yeager seeks to recover damages from Phillips Construction, LLC ("Phillips Construction") and Danny Freeman for injuries sustained by Yeager while awaiting a load of dirt excavated by Freeman at a job site near Bridgeport, Harrison County, West Virginia, now known as the White Oaks Business Park.

On September 11, 2008, Yeager was operating a Komatsu HM400 40-ton dump truck at the job site. His job was to receive and haul away excavated dirt from a Komatsu

1

PC1250 50-ton excavator operated by Freeman. At approximately 2:30 p.m., while Yeager was in position awaiting a load of dirt, Freeman used the bucket of his excavator to make contact with the side of Yeager's dump truck and then the back, lifting the back of the truck into the air and moving the truck forward. The impact of the truck returning to the ground caused Yeager to sustain neck injuries which have since required a C4-5 and C5-6 anterior cervical discectomy and fusion and will likely require a fusion of the entire length of his neck, from C2 to T1. One eyewitness described the incident as follows:

> Jeff Yeager backed up and stopped to wait to be loaded. Mr. Freeman was not happy with the way he parked. He complained and struck the side of the truck with the excavator bucket. He then proceeded to use the bucket of the excavator to lift the back of the truck up into the air. The truck was off of the ground at least five to six feet. The front of the truck was pointed down toward the ground. Mr. Freeman moved the truck forward and dropped it to the ground. Dust flew and the truck bounced. It was violent. Mr. Freeman also cussed [Yeager] about not backing up soon enough and in the right spot.

(Brian Barksdale Affidavit at ¶ 8). Freeman claims he made contact with the dump truck because Yeager would not answer his call on the radio to move up to allow the bull dozer cleaning the pile to leave. Yeager asserts that the bull dozer had already left prior to the incident.

Immediately following the incident, Yeager complained to his supervisor and was reassigned to receive loads from another excavator operator. The next day, David Farley, the president of Phillips Construction, permitted Yeager to operate a water truck due to the pain in his neck. During this conversation, Yeager told Farley of the incident with Freeman.

After his shift, Yeager presented at an urgent care clinic located in Bridgeport, where he received x-rays of his cervical and thoracic spine and was advised to take leave from work until September 24, 2008. Yeager never returned to work and instead began receiving workers' compensation benefits. To gain access to his retirement, Yeager officially resigned from Phillips Construction by letter dated October 3, 2008. Yeager had been employed by Phillips Construction since June 2008.

Freeman, who had been employed by Phillips Construction or its predecessor since 1999, was not discharged or suspended as a result of the incident with Yeager. Instead, Freeman was required to sign a Counseling Statement dated September 17, 2008, in which his supervisor Don Nalley described Freeman's behavior toward Yeager as follows: "Reckless operation of equipment to get the attention of a truck driver. Shoving truck forward with excavator after it had stopped to be loaded." ([Doc. 138-9] at 1). Nalley directed Freeman to "contact supervision if unable to communicate with another worker." (Id.). If Freeman failed to do so in the future, Nalley informed him that the consequences would be "potential discharge." (Id.).

The incident with Yeager was not the first time Freeman had used the bucket of his excavator to make contact with a dump truck awaiting a load. John Baisi, a night-shift supervisor for Phillips Construction, has testified that other employees had also complained about Freeman exhibiting the same behavior toward them but that he was prevented from reprimanding Freeman:

> Q. Did employees complain about Mr. Freeman doing this behavior?
> A. Yes, we had a lot of complaints about it.
> . . .

3

Q. But was it routine that you would hear the truck drivers and other equipment operators complaining about Danny Freeman hitting and moving their trucks?

A. Yes.

. . .

Q. Several employees complained?

A. Several employees complained about Danny Freeman[.]

Q. And the complaints were that he was hitting the truck and lifting it up and dragging the truck with the hoe?

A. Yes. Me and Danny Freeman had arguments about it and he's always – he went overtop of – David Farley was the president, but Bob Phillips was nearer so Danny Freeman, he talked to Bob Phillips personally and it overrode anything that I would say to Danny.

Q. So you would try to reprimand Danny?

A. I'd say something to Danny for it. You know. Try to write him up, get him in trouble, tell the president of the company about it.

. . .

Q. But when you would yell at Danny or argue with Danny Freeman about hitting and moving these trucks, you would be overridden by Mr. Phillips, the owner of the company?

A. Yes.

Q. And that would happen after Danny Freeman would contact Mr. Phillips?

A. Yes. I tried to take Danny Freeman off of my shift and it just never happened. Every night that I'd come out, Danny would be on the hoe already.

Q. Did you and Dave Farley, the president of the company, discuss the problems that you were having with Danny Freeman?

A. Yes.

Q. Did Dave Farley also try to do something about Danny Freeman's behavior?

A. I'm pretty sure there was an argument about that.

Q. Was that an argument where Mr. Phillips again overrode the on-site supervisors and would not allow Mr. Freeman to be fired?

A. Yes.

Q. And you were aware of that as it was happening?

A. Yes.

Q. And you and Mr. Farley obviously discussed that?

A. Yes.

Q. And Mr. Farley and you were not allowed to fire Danny Freeman or move him to a different shift?

A. No.

Q. That was because Mr. Phillips would not let it happen?

A. Yes.

. . .

A. To tell you the truth, one time [Freeman] told me that he was a part owner of the company and he'd be there when I was gone and turned around and walked away from me.

. . .

Q. You had written Danny up in the past, but didn't get anywhere with it?

A. Yes.

Q. And you had written him up for reckless behavior?

A. Yes.

Q. Because he kept hitting and moving the trucks and dragging them around, you'd write him up but it never went anywhere?

A. Never went nowhere. Faxed our paperwork to the main office in Henderson, Kentucky every morning before I left.

Q. There was several times that you would have written Danny Freeman up and sent it into the company?

A. Yes.

(John Baisi Deposition at 8-12, 20, 39-40).[1]

## II. Procedural History

On June 17, 2010, Yeager filed a deliberate intent action against Phillips Construction and Freeman pursuant to W.Va. Code § 23-4-2(d)(2), in the Circuit Court of Harrison County, West Virginia [Doc. 3-1]. On August 16, 2010, the defendants removed the matter to this Court citing diversity jurisdiction pursuant to 28 U.S.C. § 1332 [Doc. 3].

On September 16, 2011, the defendants moved for summary judgment arguing that Yeager had failed to present a genuine issue of material fact on the elements necessary to succeed in a deliberate intent action [Doc. 38]. On November 10, 2011, this Court denied the defendants' motion without prejudice as premature noting that a third amendment of the schedule had just been granted, extending the discovery completion date and the dispositive motions deadline to February 1, 2012 [Doc. 47]. Thereafter, on the defendants' motion, this Court amended the schedule a fourth time, extending the discovery completion date to April 14, 2012, and the dispositive motions deadline to April 20, 2012 [Doc. 67].

On April 19, 2012, the defendants filed the instant Renewed Motion for Summary Judgment [Doc. 115] arguing that Yeager has failed to present a genuine issue of material fact on all five elements of a deliberate intent action outlined in W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E). Specifically, the defendants contend that Yeager has failed to establish that: (1) Phillips Construction had actual knowledge of an alleged unsafe working condition

---

[1]The Court is aware that the defendants have moved *in limine* to exclude the testimony of John Baisi. For reasons that will be articulated in a subsequent Order, this Court is unpersuaded that exclusion of the above-quoted testimony is warranted.

caused by Freeman until Yeager complained after the incident on September 11, 2008; (2) the alleged unsafe working condition caused by Freeman was a violation of any state or federal safety statute, rule or regulation, or of a commonly accepted and well-known safety standard within the industry; and (3) Phillips Construction intentionally exposed Yeager to the alleged unsafe working condition caused by Freeman.  In addition, the defendants argue that Yeager should be barred from maintaining a deliberate intent action because he was allegedly using his cell phone at the time of the incident, thereby creating the unsafe working condition about which he now complains.

On May 4, 2012, Yeager filed a Response [Doc. 138] in opposition to the instant motion arguing that he has presented genuine issues of material fact on the three elements challenged by the defendants.  First, Yeager cites the affidavit representations of two employees that they complained to the night-shift superintendent about Freeman's behavior as well as the testimony of the night-shift superintendent that he had complained to the president of Phillips Construction but that the owner prevented any form of discipline. Second, Yeager asserts that Freeman's behavior violated safety rules specifically applicable to the construction industry, including universal consensus safety standards adopted by Phillips Construction in its policies and procedures manual.  Third, Yeager argues that his reassignment after the incident does not preclude a finding that Phillips Construction intentionally exposed him to an unsafe working condition by assigning him to work with Freeman despite actual knowledge of his previous tendency toward violent behavior. Finally, Yeager contends that the unsafe working condition was caused by Freeman's behavior and thus that he should not be barred from pursuing this deliberate intent action.

A pretrial conference is currently scheduled for May 21, 2012, to be followed by a jury trial set to commence on May 29, 2012.

## DISCUSSION

### I. Applicable Standard

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See **Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. ***Anderson***, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. ***Anderson***, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. ***Id.*** at 252.

"In a deliberate intention case, 'the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure, that one or more the facts required to be proved by the provisions of subparagraphs (A) through (E) [of W.Va. Code § 23-4-2(c)(2)(ii)] do not exist[.]' W.Va. Code § 23-4-2(c)(2)(iii)(B). 'Thus,

in order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors.' **Mumaw v. U.S. Silica Co.**, 204 W.Va. 6, 9, 511 S.E.2d 117, 120 (1998)." **Deskins v. S.W. Jack Drilling Co.**, 212 W.Va. 525, 528, 600 S.E.2d 237, 240 (2004).

**II.    Analysis**

   **A.    Bar to Deliberate Intent Action – Plaintiff-Created Unsafe Working Condition**

The defendants argue that Yeager should be barred from pursuing this deliberate intent action because at the time of the incident he was allegedly using his cell phone in violation of company policy and thus that he created the unsafe working condition that caused his injuries. This argument garners only brief consideration before its ultimate rejection.

While the Supreme Court of Appeals of West Virginia has recognized a bar to a deliberate intent action when a plaintiff's failure to comply with safety procedures creates the unsafe working condition, *see* **Deskins v. S.W. Jack Drilling Co.**, 212 W.Va. 525, 531, 600 S.E.2d 237, 243 (2004), application of such a bar is clearly not appropriate in this case. To conclude otherwise would require this Court to find that Freeman's actions were reasonably necessary to capture Yeager's attention away from his cell phone. That this Court will not do. As such, Yeager may proceed with the instant deliberate intent action if he is able to make a prima facie showing on the five elements outlined in W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E).

**B.     W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E)**

Pursuant to W.Va. Code § 23-4-2(d)(2)(ii), the immunity provided an employer covered by the West Virginia Workers' Compensation Act is lost if the employee proves each of the following five elements:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W.Va. Code § 23-4-2(d)(2)(ii)(A)-(E).

Here, the defendants argue that Yeager has failed to make a prima facie showing of dispute on subparagraphs (B), (C), and (D). Below, the Court will consider each of the challenged elements in turn.

### 1. Actual Knowledge

To establish the second element of a deliberate intent action, a plaintiff must offer evidence showing that the employer knew of both the specific unsafe working condition and that it represents a "high degree of risk and the strong possibility of serious injury or death." W.Va. Code § 23-4-2(d)(2)(ii)(B). The actual knowledge requirement "is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong probability of serious injury or death presented by that condition. Instead, it must be shown that the employer actually possessed such knowledge." Syl. pt. 3, *Blevins v. Beckley Magnetite, Inc.*, 185 W.Va. 633, 408 S.E.2d 385 (1991). This determination "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often reasonably be drawn." Syl. pt. 2, in part, *Nutter v. Owens-Illinois, Inc.*, 209 W.Va. 608, 550 S.E.2d 398 (2001). "[T]he type of evidence presented to establish the requisite subjective knowledge on the part of the employer often has been presented as evidence of prior similar injuries or of prior complaints to the employer regarding the unsafe working condition . . . ." *Ryan v. Clonch Indus.*, 219 W.Va. 664, 673, 639 S.E.2d 756, 765 (2006).

The defendants claim that Yeager cannot show that Phillips Construction had actual knowledge of Freeman's behavior because Yeager's deposition testimony "reveals that

11

prior to September 11, 2008, [Yeager] had not complained to [Phillips Construction] regarding Mr. Freeman's conduct[.]" ([Doc. 115] at 9). This argument misses the mark.

Prior complaints need not be made by the plaintiff to satisfy the actual knowledge requirement. Any suggestion to the contrary improperly reads on to W.Va. Code § 23-4-2(d)(2)(ii)(B) a requirement that simply does not exist. Instead, as outlined above, a showing that other employees have made similar complaints to management about a particular unsafe working condition is strong evidence of actual knowledge.

Here, Yeager has easily made a prima facie showing of actual knowledge based upon the testimony of night-shift supervisor John Baisi. Not only did Baisi testify that he had heard other employees complain of similar behavior by Freeman, he also testified that the same behavioral issue with Freeman that led to Yeager's injuries was brought to the attention of the president and the owner of Phillips Construction. As such, summary judgment is not warranted for failure to present a genuine issue of material fact on the actual knowledge requirement.

### 2. Violation of Safety Statute or Standard

To establish the third element of a deliberate intent action, a plaintiff must offer evidence showing that the alleged specific unsafe working condition violated either: (1) a "state or federal safety statute, rule or regulation" or (2) a "commonly accepted and well-known safety standard within the industry or business of the employer." W.Va. Code § 23-4-2(d)(2)(ii)(C). In either case, the law or standard must have been "specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, or regulation or standard generally requiring safe workplaces, equipment or working conditions." Id.

In his November 23, 2011, report, Yeager's expert describes the specific unsafe working condition in this case as a combination of "the repeated practice of Freeman to use his excavator to move dump trucks into position for loading by bumping or lifting and dropping them with his excavator" and "Phillips management's failure to comply with industry standards of care to take proper disciplinary action regarding this practice." ([Doc. 138-10] at 9). In a supplemental report dated February 24, 2012, Yeager's expert opines that Freeman's practice of using his excavator to move dump trucks constituted a violation of the prohibition against wilful misuse of company property contained in Phillips Construction's safety standards manual, which he further opines represents a commonly accepted and well-known safety standard within the construction industry. In addition, Yeager's expert opines that the failure of Phillips Construction management to properly discipline Freeman exacerbated the unsafe working condition and violated commonly accepted and well-known safety standards within the construction industry with regard to the removal of hazards from the workplace. See Doc. 138-8.

The defendants argue that these expert reports are insufficient to present a genuine issue of material fact on the third element necessary to prove deliberate intent. This Court disagrees.

In **Mayles v. Shoney's, Inc.**, 185 W.Va. 88, 405 S.E.2d 15 (1990), an employee of a restaurant was severely injured at work while carrying a five-gallon open container of hot grease down a grassy slope to a disposal unit located outside the restaurant. In finding that the plaintiff had sufficiently established that this manner of disposal violated a commonly accepted and well-known safety standard within the restaurant industry, the Supreme Court of Appeals relied exclusively on the testimony of the plaintiff's expert that

13

"the industry standards for disposing of the hot grease would have been to drain the grease into a container which could have been tightly sealed and could have transmitted or transferred that hot grease to another container without the possibility of the hot grease escaping the container." *Id.* at 22.

Like the court in *Mayles*, this Court holds that the testimony of Yeager's expert, without reasonable contradiction from the defendants, suffices to establish a prima facie showing on the third element.

### 3.     Intentional Exposure

To establish the fourth element of a deliberate intent action, there "must be some evidence that, with conscious awareness of the unsafe working condition . . . , an employee was directed to continue in that same harmful environment." *Tolley v. ACF Indus., Inc.*, 212 W.Va. 548, 558, 575 S.E.2d 158, 168 (2002). "In other words, this element, which is linked particularly with the [actual knowledge] element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." *Sias v. W-P Coal Co.*, 185 W.Va. 569, 575, 408 S.E.2d 321, 327 (1991). In any event, the employer need not specifically intend to injure the employee but only to expose the employee to the actually known specific unsafe working condition. *Id.*

The defendants assert that Yeager cannot show intentional exposure because, after the incident, "supervisory personnel *immediately* moved [him] to another area of work where he did not have to interact with Mr. Freeman." ([Doc. 115] at 12) (emphasis in original). This assertion is unavailing, however, because evidence of an employer's actions *after* an incident is irrelevant to the issue of whether there was intentional exposure *prior* to the incident, as shown by the link between this element and the actual knowledge

14

requirement.

Drawing all reasonable inferences in favor of Yeager, the record shows that Phillips Construction assigned Yeager to work in tandem with Freeman despite having actual knowledge that his behavior, which had been learned by prior complaints and had gone undisciplined, created a specific unsafe working condition that had not been remedied. As such, this Court holds that Yeager has made a prima facie showing of intentional exposure.

## **CONCLUSION**

Because Yeager has made a prima facie case for deliberate intent, this Court concludes that the defendants' Renewed Motion for Summary Judgment should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** May 16, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE